■ BASIC IMAGE, INC., Respondent, v TRANSAMERICA INSURANCE FINANCE CORPORATION, Appellant, et al., Defendant. [660 NYS2d 433] —Order, Supreme Court, Bronx County (Anne Targum, J.), entered November 13, 1995, which, *inter alia*, denied defendant-appellant's motion for summary judgment dismissing the complaint as against it, modified, on the law, the motion granted and the complaint dismissed as against appellant, and otherwise affirmed, without costs or disbursements. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint.

Plaintiff, Basic Image, Inc. (Basic Image), is a New York corporation engaged in the retail sale of jewelry. Defendant, Transamerica Insurance Finance Corporation (Transamerica), is an insurance premium financing company licensed by the

Banking Department of the State of New York. Defendant, Underwriters at Lloyd's (Lloyd's), issued a policy of insurance to Basic Image which included the risks of burglary and theft. The policy was financed by defendant Transamerica in an agreement whereby the plaintiff agreed to pay monthly installments to Transamerica, and upon failure of the plaintiff to timely pay such installments, Transamerica could exercise a power of attorney given to it in the premium finance agreement to cancel the policy with Lloyd's. Plaintiff made a downpayment and Transamerica advanced the balance to pay the premium in full. Subsequently, four monthly payments were made by Basic Image in partial repayment of the debt. The fifth payment was not made in a timely fashion and Transamerica notified the insured that if payment were not made by a date certain, it would exercise its statutory and contractual right to cancel the policy of insurance. A Notice of Cancellation was sent to the insurer, Lloyd's, by Transamerica, with a cancellation date of January 29, 1994. On or about February 1, 1994, unidentified persons committed a burglary/robbery of plaintiff's goods, which risk was covered by the policy. After Lloyd's disclaimed liability based on the cancellation, plaintiff commenced this action claiming that Lloyd's wrongfully disclaimed liability and that Transamerica wrongfully and negligently executed the power of attorney to cancel the policy.

Transamerica's motion for summary judgment and the other parties' cross motions for the same relief were denied by the IAS Court. Since Transamerica conceded plaintiff's facts for the purpose of the summary judgment motion, we begin our analysis with the assumption that Transamerica erroneously notified Lloyd's to cancel the policy of insurance.

Transamerica is not an insurance broker or agent of the insured. The premium finance agreement was forwarded to Transamerica by Wallberg Company, Inc., the insurance broker chosen and retained by the insured. Also, while Transamerica transmitted the balance of the premiums due to the insurer, it had nothing to do with the procurement of the insurance, and the insured plaintiff chose the insurer.

Assuming that Transamerica wrongfully cancelled the policy, it has no liability other than to return the premiums it received as a result of the wrongful cancellation (*Home Mut. Ins. Co. v Broadway Bank & Trust Co.*, 53 NY2d 568). Thus, the Court of Appeals held in *Home Mutual* that a bank acting as a premium finance agency was under no duty to the insurer with respect to monies paid in a settlement after the bank sent the insured an inadequate notice of cancellation. The plaintiff would

distinguish *Home Mutual* on the ground that the holding therein is that the premium finance agency has no duty to the *insurer* while in this case the duty sought to be imposed is toward the *insured*. This, however, is a distinction without a difference. "Plaintiff concedes that the bank was not obligated by the statute to cancel Ludwig's policy when she defaulted in her payments to it; the choice whether to do so was with the bank and the carrier had no right either to demand or expect cancellation of the obligation it had assumed when it entered into the contract of insurance. The statutory authorization for cancellation by the financing agency was *for the benefit of the agency, which could thereby recoup a part of the premium it had advanced to the insurer. When the bank chose to exercise that authority it was acting solely for its own interest and not for the purpose of extending any advantage to the carrier*; indeed, cancellation of a policy, the premium for which had been fully paid to the insurer, would normally be regarded at that time as contrary to the interests of the carrier which presumably was interested in writing insurance. It was only the subsequent, improvidental loss under the policy which prompted the insurer to seek to shift the economic burden of the risk it had been paid to underwrite." *(Home Mut. Ins. Co. v Broadway Bank & Trust Co., supra,* at 575; emphasis added.)

Likewise, in this case, it was solely the finance agency's choice to cancel the policy upon default. Lloyd's had no right to either demand or expect cancellation simply because Transamerica had not been paid in a timely fashion. Moreover, when Transamerica chose to exercise its power of attorney to cancel, it did *not* do so as the agent of the insured but for its *own* interests. The statutory authorization for cancellation by the financing agency is for the benefit of the financing agency so that it can recoup some of the monies it has paid *(supra)*. Consequently, if plaintiff can prove the facts assumed herein, then the cancellation will be treated as a nullity and the insurance by Lloyd's will be reinstated as though the wrongful cancellation never took place.

Another way of stating this is to assert that in New York, the premium financing agency does not "buy the risk." In *Home Mutual (supra,* at 577) the Court of Appeals noted the public policy reasons against holding the premium finance agency subject not merely to a loss of recoupment of a premium advanced by it to an insurer but "also to contingent liability for whatever loss (potentially large) might befall an insurer under its policy obligations in the event the lender ineffectively attempted to cancel a policy on the insured's default in payments

to it." Faced with such additional potential liability, "qualifying banks and lending units might well decline to act as premium financing agencies" (*supra*, at 577). Precisely the same policy reasons can be applied against holding the premium finance agency liable to the *insured* for contingent liabilities. This is especially true since the insured has recourse, as noted above, against the insurer, if the policy has been wrongfully cancelled.

Therefore, the IAS Court should have granted Transamerica's motion for summary judgment and we modify accordingly. Concur—Ellerin, Nardelli, Tom and Andrias, JJ.

Sullivan, J. P., concurs in a memorandum as follows. I agree that *Home Mut. Ins. Co. v Broadway Bank & Trust Co.* (53 NY2d 568) is not controlling, as argued by defendant Transamerica Insurance Finance Corp., plaintiff's premium finance company, given that the relationship at issue here and consequent duty, if any, unlike *Home Mutual*, involves the insured and its finance company. I would affirm the denial of Transamerica's motion for summary judgment dismissing the complaint against it solely on the ground that if the cancellation by Transamerica, under a power of attorney given it by plaintiff authorizing cancellation for non-payment of an installment under the premium finance agreement, is shown to be effective, yet unauthorized on Transamerica's part under the terms of the parties' standard form contract because the grace period had not expired, Transamerica could be held liable for plaintiff's uninsured loss. In a sense then, the finance company would be "buying the risk" since its liability would be measured by the extent of plaintiff's uninsured loss. Of course, if the cancellation is shown to be ineffective, plaintiff's loss would be covered and Transamerica would be out of the case.